# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

N.T., a minor represented by her next friend,
Cathy Tabbert,
      Plaintiff,

v.                                     Case No. 11-CV-00556

SCHOOL DISTRICT OF WESTFIELD,
MARCIA VAN NATTA, and MARY MADES,
      Defendants.

## DECISION AND ORDER

Plaintiff N.T., a minor, brings this lawsuit under 42 U.S.C. § 1983 against the School District of Westfield ("the District") and two of its employees, Marcia Van Natta and Mary Mades. Plaintiff claims that Van Natta and Mades violated her right to equal protection of the law and that the District violated her right to substantive due process. Defendants now move for summary judgment.

## I. BACKGROUND

Plaintiff started attending school in the District in the fifth grade. That year Van Natta's daughter, A.V.N., was one of plaintiff's classmates, and the two girls initially became friends but soon drifted apart. Plaintiff cannot recall exactly when or why she and A.V.N. stopped being friends. They did not have a verbal or physical fight but stopped spending time together by the end of the school year. Plaintiff believes that defendant Van Natta was so upset by their falling out that she began a campaign to harass plaintiff.

Plaintiff claims that Van Natta started harassing her when Van Natta was coaching a club basketball team on which plaintiff played during her fifth and sixth grade years. The

team was sponsored by the Pioneer Youth Basketball Club, a community organization not affiliated with the District. Van Natta volunteered to coach the team because A.V.N. was also on it. Plaintiff alleges that once her friendship with A.V.N. ended Van Natta yelled at her more during practice and gave her less playing time. Plaintiff, however, admits that she still received the same amount of playing time as several other girls on the team.

Plaintiff says the abuse continued when Van Natta coached plaintiff's school-sponsored seventh grade basketball team. Ordinarily, Van Natta taught eighth grade English for the District, but that year the District asked her to coach girls basketball because the previous coach had died unexpectedly. Plaintiff again concedes that Van Natta gave her roughly the same amount of playing time as other players,[1] but maintains that Van Natta yelled at her excessively. Van Natta never got angry at her players or insulted them, but she frequently raised her voice and plaintiff claims Van Natta yelled at her more than others.

The following year Van Natta became plaintiff's eighth grade English teacher. While Van Natta never said anything inappropriate to plaintiff in class and gave her a fair grade, an "A-," plaintiff claims Van Natta made negative comments about her to her classmates. Plaintiff states that, after A.V.N. had a sleepover, one of the girls who attended told plaintiff that Van Natta had made negative comments about her at the party. Plaintiff, however, offers no admissible evidence to prove this. Plaintiff's testimony on this point is hearsay, and plaintiff submits no affidavit from anyone who actually heard Van Natta's comments.

---

[1] Van Natta divided the team of ten into two squads of five and rotated the squads each quarter during a game. Only the top five players got additional playing time because Van Natta would sometimes put them in at the end of close games, and plaintiff admits she was not one of the top five players.

2

The next year plaintiff graduated and moved on to high school and again had a problem with one of her coaches. This time the conflict was with defendant Mades, who was the athletic director and dean of students for the District's high school as well as the coach of the varsity softball team. Plaintiff tried out for softball and was one of a handful of freshman selected to play on the varsity for the first two weeks of the season. After two weeks, plaintiff and two other freshman were sent back to the junior varsity ("JV") team. Ultimately, only three freshmen remained on the varsity team, while eight went to the JV team. Plaintiff suggests that Mades sent her back to the JV team because Mades was Van Natta's friend and Van Natta did not want plaintiff on the varsity because A.V.N. had also tried out for softball and not made the varsity. Plaintiff, however, offers no evidence of this.

Plaintiff also claims that Van Natta convinced plaintiff's sophomore year basketball coach, Mike Grosskreutz, to yell at her during practices and bench her during games but again offers no evidence to support her assertion. Plaintiff's father says he once saw Grosskreutz and Van Natta laughing and pointing at plaintiff while she was sitting on the bench during practice, but he acknowledges that he did not hear what they were saying. Grosskreutz denies making any decisions based on Van Natta's advice and states that he limited plaintiff's playing time because she missed numerous practices. School records corroborate his testimony, indicating that plaintiff missed 60 days of school her sophomore year.

Plaintiff also asserts that Mades improperly denied her a "high honor roll pass," a pass given to high-achieving students that provides privileges of movement. Plaintiff states that during her sophomore year Mades distributed such passes but did not have one for her. When plaintiff asked why, Mades said that she must not have earned one. As a result,

3

plaintiff went home, checked her grades and presented them to the staff in the school office. The office staff said that she qualified for a pass and sent her to Mades who provided her with one. Plaintiff acknowledges that the pass may have been missing because of an unintentional error and that other students also received their passes late.

In the spring of plaintiff's sophomore year, plaintiff's parents filed formal bullying and harassment complaints against several students and staff members including Van Natta, Mades, and Grosskreutz. District Business Manager Brian Walters conducted an investigation and found no instances of bullying or harassment against plaintiff. In June 2010, unrelated to plaintiff's situation, the District updated its harassment and bullying policy and included a provision stating that "false reports or retaliation for harassment or bullying constitute violations of this policy" and that individuals who made such reports would be subject to disciplinary action. (Def.'s Proposed Findings of Fact ("DPFOF") ¶ 175, ECF No. 22.) The new policy took effect in the 2010–2011 school year, plaintiff's junior year.

At the start of that school year, Mades became plaintiff's band teacher, and plaintiff says Mades used that position to harass her. Plaintiff contends that the harassment began on the first day of school when there was an impromptu pep rally. The band was asked to play at the rally and plaintiff had left her instrument at home. When plaintiff told Mades this, Mades said it was "fine, just bring it tomorrow" and to "just stand by me" so that plaintiff could at least participate in the cheering. (DPFOF ¶¶ 93, 94.) Plaintiff did not feel she had a choice about participating so she stood next to Mades but says she found the experience humiliating.

4

In October 2010, plaintiff's mother looked up plaintiff's grades on Skyward, the school's online grading system, and saw that plaintiff's grade for band was an "F." She emailed the principal, David Moody, who told her that the grade was low because plaintiff had missed several band lessons and that it would be higher once the grades for the homecoming halftime performance were entered. Later in October, plaintiff's mother again emailed Moody to say that the grade had not been changed. He then explained to her that the "F" was plaintiff's midterm grade and that the current grade was a "C." On October 25, 2010, he had the settings for the website fixed so plaintiff's parents could see the current grade. In January 2011, the Skyward system again reflected an error, showing a grade of "F" for the previous semester, but Moody advised plaintiff's mother and that there must be some kind of computer glitch and that plaintiff's final grade was a "B+." In March 2011 Moody and Mades met with plaintiff's mother to discuss the problem, but plaintiff's parents still decided to withdraw her from band. Plaintiff now claims Mades was manipulating the grades on the website to harass plaintiff, but she presents no evidence of this.

In the spring of plaintiff's junior year, plaintiff had another dispute with Mades. Mades selected plaintiff for the varsity softball team, and the team started the season by participating in a three-game weekend tournament. During the first game, plaintiff was the designated hitter, but after that she was benched. Mades says she chose to use plaintiff as a designated hitter and subsequently benched her because the other girls on the team were stronger fielders. Because she was the only player benched, plaintiff and her father decided to leave before the end of the third game. Since she left in the middle of a game, the two team captains asked that she be removed from the team, but Mades decided to

5

place her on the JV team instead and give her the chance to earn her way back on to varsity. Plaintiff played with the JV team for the rest of the season.

Plaintiff claims that the harassment from teachers and coaches encouraged students to bully her as well. In particular, plaintiff claims A.V.N. tried to turn other students against her and spread rumors about her. In October 2010, plaintiff's mother told several teachers that A.V.N.'s harassment of plaintiff was causing plaintiff to suffer from headaches and fatigue. Moody investigated and notified plaintiff's mother that he found no evidence that A.V.N. had harassed plaintiff. He also warned plaintiff's mother not to make unfounded allegations of bullying because such behavior could itself be considered bullying.

As a result of the foregoing incidents, plaintiff's parents asked to appear before the school board to discuss their concerns about plaintiff's treatment. In January and February 2011 the school board granted them such permission. The school board president reviewed their allegations and, in March 2011, informed them that the board had decided not to take any action. On April 14, 2011, plaintiff's parents filed another formal bullying and harassment complaint against Mades. Moody then interviewed plaintiff, her parents, Mades, and every member of the varsity softball team but concluded that the complaint was baseless. In the summer of 2011, plaintiff's request to attend an out-of-district school was granted, and she left the District for her senior year.

## II. DISCUSSION

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

6

56(a). When considering a motion for summary judgment, I view the evidence in the light most favorable to the non-moving party and may grant the motion only if no reasonable juror could find for plaintiff. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 255 (1986). I am not required, however, to draw every conceivable inference from the record in plaintiff's favor. "Inferences that are supported only by speculation or conjecture will not defeat a summary judgment motion." McDonald v. Winnetka, 371 F.3d 992, 1001 (7th Cir. 2004).

To establish a right to relief under § 1983, a plaintiff must prove that: 1) she was deprived of a right secured by the Constitution or laws of the United States; and 2) the deprivation was caused by a person acting under color of state law. Buchanan-Moore v. Cnty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009).

Plaintiff claims that Van Natta and Mades violated her Fourteenth Amendment right to equal protection because they intentionally treated her differently from other similarly situated students without a rational basis. The claim asserted by plaintiff is known as a "class of one" claim. See Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000). In order to establish a class-of-one claim, plaintiff first has to identify similarly situated individuals who defendants treated more favourably. McDonald, 371 F.3d at 1002 ("[A]t their heart, equal protection claims, even 'class of one' claims, are basically claims of discrimination."). But see Geinosky v. City of Chicago, 675 F.3d 743, 748 (7th Cir. 2012) (holding that a person who received 24 bogus parking tickets from the City of Chicago in a single year did not need to identify a specific comparator because facts made it obvious plaintiff had been treated more harshly than other Chicago residents). A comparator is "similarly situated" if

7

he or she is "'directly comparable to [plaintiff] in all material respects.'" See Racine Charter One, Inc. v. Racine Unified Sch. Dist., 424 F.3d 677, 680 (7th Cir. 2005) (quoting Ajayi v. Aramark Bus. Servs., Inc., 336 F.3d 520, 532 (7th Cir. 2003)).

Plaintiff then must show that defendants' actions lacked a rational basis. She may do this by establishing that the differential treatment was not rationally related to a legitimate governmental purpose. Srail v. Vill. of Lisle, 588 F.3d 940, 946 (7th Cir. 2009). "This is an onerous test to overcome, as 'the burden is upon the challenging party to eliminate any reasonably conceivable state of facts that provide a rational basis for the classification.'" Id. (quoting Smith v. City of Chicago, 457 F.3d 643, 652 (7th Cir. 2006)). Finally, it is an open question in this circuit as to whether a plaintiff must also show that the differential treatment was motivated by some kind of illegitimate animus. Compare Del Marcelle v. Brown County Corp., 680 F.3d 887, 899 (7th Cir. 2012) (en banc) (opinion of Posner, J.) ("The plaintiff must plead and prove *both* the absence of a rational basis for the defendant's action *and* some improper personal motive . . . ."), with Del Marcelle, 680 F.3d at 913 (opinion of Wood, J.) (noting that "personal animus" and "illegitimate motives" are simply illustrative of the kind of facts that might be used to prove "the lack of a rational basis").

Plaintiff contends that Van Natta violated her right to equal protection by engaging in a campaign to harass her from the time she was in fifth grade until she was a sophomore in high school. Plaintiff, however, concedes that Van Natta was not a state actor when she coached plaintiff on her club basketball team in the fifth and sixth grade. And, as noted, plaintiff presents no admissible evidence that Van Natta made negative

8

comments about her at A.V.N.'s sleepover or that she conspired with Mades or Grosskreutz to limit plaintiff's participation in high school sports. Thus, plaintiff's claim against Van Natta comes down to her assertion that Van Natta yelled at her more than the other players on plaintiff's seventh grade basketball team. This claim, however, fails. First, plaintiff does not show that she was similarly situated to her teammates in terms of skill level and effort. Second, even assuming that plaintiff had made such a showing, she fails to show that Van Natta lacked a rational basis for yelling at her or that Van Natta yelled at her for an impermissible reason. As coach, Van Natta had discretion to decide how much guidance to give each player. Conceivably, Van Natta believed that plaintiff would benefit from additional guidance. Different players, even those with similar skills, often need different levels of coaching. See Engquist v. Or. Dep't of Agric., 553 U.S. 591, 603–04 (2008) (noting that it is difficult to prove a class-of-one claim where the state action at issue involved "discretionary decisionmaking based on a vast array of subjective, individualized assessments"). Plaintiff also presents no evidence that Van Natta was upset because plaintiff and A.V.N. were no longer friends, much less that she punished plaintiff on account of it. Thus, no reasonable factfinder could conclude that Van Natta violated plaintiff's right to equal protection.

Plaintiff's class-of-one claim against Mades fails for similar reasons. No reasonable factfinder could find that Mades' decision to place plaintiff on the JV softball team during her freshman year constituted an equal protection violation. This is so because plaintiff presents no evidence indicating that she was treated less favorably than similarly situated students. Plaintiff was one of eight freshmen placed on the JV team that year, and she

9

actually received more favorable treatment than most freshmen, including A.V.N., because she was given an opportunity to play on the varsity team for the first two weeks of the season. Plaintiff also presents no evidence that Mades intentionally withheld plaintiff's high honor roll pass and thereby treated her less favorably than other students. Plaintiff had to wait only one day to get her pass and concedes that the delay may have been the result of an unintentional error. She also concedes that she was not the only student who received a pass late. Plaintiff also fails to show that Mades treated her differently than similarly situated students during the pep rally on the first day of her junior year. Plaintiff apparently was the only student who did not have her instrument with her on that day. Further, Mades had a rational basis for having plaintiff stand in front with her. This allowed plaintiff to participate in the rally. Further, plaintiff presents no evidence that Mades caused incorrect band grades to appear on the Skyward system. The record indicates that Moody and Mades worked to ensure Skyward would display the most up-to-date grade to plaintiff and reassure plaintiff's parents about the grades.

Finally, plaintiff presents no evidence that Mades violated her right to equal protection by benching her during the varsity softball tournament. Like Van Natta, Mades had to use her discretion to determine how best to coach her team. In doing so, her goal was not to give every player the same amount of playing time but to win games. Mades says that after evaluating her players, she concluded that plaintiff was not as good a fielder as the other players. As a result, she played plaintiff as the designated hitter during the first game of the tournament and benched her for the second and third games. This is the kind of discretionary decision that a coach is entitled to make. While plaintiff disagrees with the coach's assessment of her skills, she offers no evidence indicating that Mades' decision

10

was based on anything improper. Thus, the decision cannot be said to be irrational. Mades also had a rational basis for demoting plaintiff to the JV team after the tournament, the fact that plaintiff left the tournament before it was over.

Because Mades' and Van Natta's requests for summary judgment must be granted, I will also dismiss plaintiff's claim against the District for indemnification for damages caused by their acts. See Wis. Stat. § 895.46.

Finally, plaintiff claims the District violated her right to bodily integrity, which is one of the liberty interests protected by the Due Process Clause in the Fourteenth Amendment. T.E. v. Grindle, 599 F.3d 583, 589 (7th Cir. 2010) (citing Ingraham v. Wright, 430 U.S. 651, 672 (1977)). A school district can be held liable under § 1983 if it adopts an express policy that, when enforced, causes a student to be deprived of a constitutional right. Calhoun v. Ramsey, 408 F.3d 375, 379 (7th Cir. 2005) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 (1978)). According to plaintiff, the District violated her right to bodily integrity by adopting the 2010 Policy that stated that unfounded accusations of bullying could be considered a form of bullying. She claims the policy deterred her and other students from complaining about bullying by threatening them with disciplinary action. As a result, the District "'encourag[ed] a climate to flourish where innocent [children] were victimized.'" T.E. v. Grindle, 599 F.3d at 590 (quoting J.O. v. Alton Community Unit Sch. Dist. 11, 909 F.2d 267 (7th Cir.1990)).

No rational factfinder could find merit in plaintiff's claim. First, plaintiff presents no evidence that the 2010 Policy actually deterred her or any other student from filing complaints or that it resulted in any inappropriate punishment. Plaintiff's parents filed several harassment complaints after the policy was implemented and, even though the

11

District found the complaints unfounded, it took no action against them. Second, plaintiff has not demonstrated that her right to bodily integrity was actually violated. She claims her teachers and classmates verbally harassed her, but her brief fails to explain how verbal harassment could violate a person's bodily integrity. Violations of the right to bodily integrity usually involve physical abuse of some kind. See, e.g., Ingraham, 430 U.S. at 672 (discussing corporal punishment); T.E. v. Grindle, 599 F.3d at 589 (discussing sexual assault). Thus, no reasonable factfinder could find that the District violated plaintiff's constitutional right to bodily integrity.

### III. CONCLUSION

**THEREFORE, IT IS ORDERED** that defendants' motion to file additional proposed findings of fact (Docket #33) is **GRANTED**.

**IT IS FURTHER ORDERED** that defendants' motion for summary judgment (Docket #20) is **GRANTED**.

Dated at Milwaukee, Wisconsin, this 21st day of March 2013.

s/ Lynn Adelman
_____
LYNN ADELMAN
District Judge

12